*1306 OPINION.
Moeeis:
The respondent disallowed the deduction here in controversy for the reason that it was a partial charge off of a larger indebtedness not finally determined to have been worthless in 1920. The petitioner contends that each of the six notes, aggregating $50,500, charged off in 1920, constituted a separate debt, and that irrespective of the worth of the remaining four notes, which were not charged off at that time, the amount of the notes so charged off is an allowable deduction within the meaning of the Act, and, furthermore, in the event that we do not so hold, that all ten of the notes, aggregating $125,500, were worthless in that year and, therefore, it is entitled to deduct the amount actually charged off.
The pertinent provisions of section 234 of the Revenue Act of 1918 are:
(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
*******
(5) Debts ascertaineijj to be worthless and charged off within the taxable year.
The respondent’s counsel filed no brief and we are, therefore, deprived of the benefit of his views. He did, however, cite a number of cases at the hearing which he presumably relies upon to set forth any views that he may have. Disposition of these cases may aid in a solution of the question presented. In view of our findings of fact that the notes were charged off December 29, 1920, which is the taxable year in controversy, the cases of Warren-Smith Hardware Co., 7 B. T. A. 292, and Rochester Last Works, 8 B. T. A. 168, cited by him, may be dismissed from further consideration. The Farmers & Traders Bank, 4 B. T. A. 753, which holds that a mere order of a *1307 bank examiner to charge off a debt is not in and of itself sufficient to establish the worthlessness thereof, may also be dismissed from further consideration for the reason that we have made no finding that such an order was made in this case although we have been requested to do so by the proposed findings of fact submitted by the petitioner. .Our reason for making no positive finding on this subject is that the testimony of the petitioner’s witness was to the effect that the bank examiner “ practically ” ordered the charge-off of a portion of this indebtedness. While we believe there is no doubt but that the bank examiner had something to say with respect to these notes, and possibly urged that they be charged off, we can not find as a fact from the recorded testimony that an order was actually made by the examiner.
Alemite Die Casting & Manufacturing Co., 1 B. T. A. 548, cited by the respondent, held that the petitioner there had failed to adduce facts upon which a conclusion of worthlessness might be based. We believe that even a cursory examination of the facts found herein convincingly proves the worthlessness of the notes charged off in 1920. We find that the Forbes Milling Co. was organized in 1917 to engage in the milling business and that its authorized capitalization was $24,000; that it occupied premises on the right of way of the Union Pacific Railroad under a lease restricting the use thereof for a grain elevator, coal house, warehouse office and scale; that immediately upon incorporation extensive repairs were begun, and completed during the years 1917 to 1919, increasing the capacity of the mill nearly fourfold. We find further that a great deal of the new machinery installed was of the type not suited for the particular class of work performed at this mill and that the mill suffered from constant breakdowns; that a great majority of the machinery and equipment installed by the mill was second hand; that the installation of machinery and other improvements and additions were made from time to time and in such a manner that the mill could never be operated profitably. The testimony of several witnesses for the petitioner is to the effect that the mill had no other value except as an operating property or for junk; that 1920 was an extremely disastrous year for milling concerns, six mills in Topeka alone having been compelled to shut down. Certain of its machinery was encumbered by liens to the extent of about $15,000 for the payment of the balance of the purchase price thereof. In January, 1919, that company was heavily indebted to the petitioner and others, and repeated but fruitless demands for payment were made. The stock of the company was placed in escrow and the affairs thereof were placed under the management of men who were to attempt to operate the property so that the obligations to the petitioner and others *1308 might be liquidated, but even this expediency met with absolute failure and the mill later passed into the hands of the Shawnee Milling Co., which also failed. The assets were finally bid in by the petitioner at a receiver’s sale for something less than $5,000, which it later sold for about $4,000. Considering these factors, together with the financial instability of the company in. 1920 as set forth by its balance sheet, which shows total current assets of slightly over $42,000, and current liabilities of something over $279,000, or a ratio of nearly 7 to 1, we believe there is no question but that the notes charged off in 1920 were absolutely worthless and were known to be at that time.
Kespondent’s counsel cites, as authority for the proposition that the deduction claimed is a partial charge ofi and therefore not deductible, Steele Cotton Mill Co., 1 B. T. A. 299, and Davidson Grocery Co., 9 B. T. A. 390. The debt in the former case was for 30,000 pounds of cotton yarn purchased by the debtor on open account. The petitioner there determined that the balance of the account remaining unpaid was worthless and charged it ofi in 1920. This deduction was disallowed by the respondent. On appeal to this Board the petitioner contended, in the alternative, that it should at least be allowed to deduct the difference between the amount of a compromise agreement which it had entered into with the debtor and the amount charged off. The respondent contended there that the word “ debt ” as used in the Act- of 1918 means a debt in its entirety and does not permit the partition thereof and the writing off of a portion and the retention of a portion, in which contention the respondent was sustained.
The Davidson Grocery Co. case also involves the deductibility of a portion of an open account determined to be worthless and charged off in 1919. The Board in that case, following Steele Cotton Mill Co., supra, held that the amount in controversy was not deductible under the Be venue Act of 1918.
We are of the opinion that the principal enunciated in the two cases just cited and discussed does not control the issue raised here. The record shows that there were ten notes, made at different times, having different maturity dates, for varying amounts from $1,500 to $30,000, that each transaction was separate and distinct, and that neither bore any relation to the other except that they were made by the same maker, and, furthermore, that they in no wise represented or evidenced a general account. As each note was made, therefore, a separate contract was created and a separate indebtedness arose. The charge-off of a portion of any one note and the retention of a portion in the books of account would not, we believe, be deductible under the rule laid down in the cases just discussed. That, however, is not the case here. Cf. Selden v. Seiner, 12 Fed. (2d) 474.
*1309 While we do not propose to decide the worthlessness of the total indebtedness represented by four other notes not charged olf m 1920, we believe that we might have been justified in finding from the facts adduced that the entire indebtedness of $125,500 was worthless in 1920 and that the charge-off of a portion thereof was deductible under the rule laid down in Mason Machine Works Co., 3 B. T. A. 145; Higginbotham-Bailey-Logan Co., B. T. A. 566; and Amigo Coal Co., 8 B. T. A. 598.

Judgment will he entered under Rule 50.